*1322 Opinion by Judge GRABER; Partial Concurrence and Partial Dissent by Judge REINHARDT; Concurrence by JUDGE BERZON.
OPINION
GRABER, Circuit Judge:
California’s Resale Royalty Act requires the seller of fine art to pay the artist a five percent royalty if “the seller resides in California or the sale takes place in California.” Cal. Civ.Code § 986(a). Plaintiffs in these consolidated appeals are artists and the estates of artists. Sitting en banc, we address Plaintiffs’ allegation that Defendants — two auction houses and an online retailer- — violated the Act by failing to pay mandatory royalties on sales of fine art. Reviewing de novo the district court’s order dismissing this action, Zadrozny v. Bank of N.Y. Mellon, 720 F.3d 1163, 1167 (9th Cir.2013), we hold that the Act’s clause regulating sales outside the state of California facially violates the “dormant” Commerce Clause but that the offending provision is severable from the remainder of the Act. We return the case to the three-judge panel for its consideration of the additional issues raised by the parties on appeal.
A. Background
The Act requires that, “[wjhenever a work of fine art is sold and the seller residés in California or the sale takes place in California, the seller or the seller’s agent shall pay to the artist of such work of fine art or to such artist’s agent 5 percent of the amount of such sale.” Cal. Civ.Code § 986(a). The artist’s- right to the royalty may not be waived or reduced by contract. Id. The Act defines “fine art” as “an original painting, sculpture, or drawing, or an original work of art in glass.” Id. § 986(c)(2). The Act exempts some sales, including those for less than $1,000 and those involving an artist who died before 1983. Id. § 986(b).
When art is sold by an agent, “the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist.” Id. § 986(a)(1). If the seller or the seller’s agent cannot locate the artist within 90 days, the seller or agent must transfer the royalty to the California Arts Council. Id. § 986(a)(2). In that event, the Arts Council must attempt to locate the artist and deliver the royalty. Id. § 986(a)(5). If the artist still has not been located after seven years, the Arts Council may use the funds for “acquiring fíne art.” Id. If the seller or the seller’s agent fails to comply with the Act, the artist or the artist’s heirs may sue the seller or the seller’s agent for the royalty plus reasonable attorney fees. Id. § 986(a)(3), (7).
Invoking the royalty provision, Plaintiffs brought three separate class actions against Defendants Sotheby’s, Inc., Christie’s, Inc., and eBay, Inc., alleging that Defendants, acting as agents of sellers of fine art, failed to comply with the Act’s requirements. Plaintiffs allege that some sales took place in California and that other sales took place outside California but on behalf of a seller who is a resident of California. Defendants moved to dismiss the cases arguing, among other things, that the Act violates the dormant Commerce Clause.
The district court granted Defendants’ motions to dismiss. The court held that the Act’s regulation of sales outside California is an impermissible regulation of wholly out-of-state conduct, in violation of the dormant Commerce Clause. The court next held that the entire Act must be stricken as unconstitutional, because the invalid portion of the Act could not be severed. The court declined to reach the parties’ alternative arguments, such as Defendants’ argument that the Act is *1323 preempted by federal copyright laws and Defendant eBay’s argument that it is neither a seller nor a seller’s agent.
Plaintiffs timely appealed, and we consolidated the separate appeals. A three-judge panel heard oral argument last year. But, after argument, the panel directed the parties to file simultaneous briefs setting forth their positions on whether this case should be heard en banc. Thereafter, a majority of nonrecused active judges voted to hear the case en banc.
B. Dormant Commerce Clause
The Commerce Clause of the United States Constitution assigns to Congress the authority “[t]o regulate Commerce with foreign Nations, and among the several States.” U.S. Const. art. I, § 8, cl. 3. Implicit in this “affirmative grant of regulatory power to Congress” is a ‘negative aspect,’ referred to as the' dormant Commerce Clause.” Conservation Force, Inc. v. Manning, 301 F.3d 985, 991 (9th Cir.2002). The dormant Commerce Clause is a “limitation upon the power of the States,” Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 371, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976) (internal quotation marks omitted), which “prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce,” Quill Corp. v. North Dakota, 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (citation omitted). This principle ensures that state autonomy over “local needs” does not inhibit “the overriding requirement of freedom for the "national commerce.” Great Atl. & Pac. Tea Co., 424 U.S. at 371, 96 S.Ct. 923 (internal quotation marks omitted).
California’s Resale Royalty Act requires the payment of royalties to the artist after a sale of fine art whenever “the seller resides in California or the sale takes place in California.” Cal. Civ.Code § 986(a) (emphasis added). Defendants challenge the first clause because it regulates sales that take place outside California. Those sales have no necessary connection with the state other than the residency of the seller. For example, if a California resident has a part-time apartment in New York, buys .a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota' artist — even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.
The Supreme Court has held that “our cases concerning the extraterritorial .effects of state economic regulation stand at a minimum for the following proposition[ ]: ... the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State’s borders, whether or not the commerce has effects within the State.” Healy v. Beer Instit., 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) (ellipsis and internal quotation marks omitted); see also 'id. (holding that “a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State’s authority and is invalid regardless of whether the statute’s extraterritorial reach was intended by the legislature”). Here, the state statute facially regulates a commercial transaction that “takes place wholly outside of the State’s borders.” Id. Accordingly, it violates the dormant Commerce Clause. See also Valley Bank of Nev. v. Plus Sys., Inc., 914 F.2d 1186, 1189-90 (9th Cir.1990) (“Direct regulation occurs when a state law directly affects *1324 transactions that take place ... entirely outside of the state’s borders. Such a statute is invalid per se.... ” (citation and internal quotation marks omitted)).
Cases such as Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070 (9th Cir.2013), and Association des Eleveurs de Canards et d’Oies du Quebec v. Harris, 729 F.3d 937 (9th Cir.2013), do not apply here. Unlike this case — which involves regulation of wholly out-of-state conduct— Corey and Harris concerned state laws that regulated in-state conduct with allegedly significant out-of-state practical effects. See Corey, 730 F.3d at 1080 (California’s imposition of a low-carbon fuel standard, which applied to fuels “consumed in California” (emphasis added)); Harris, 729 F.3d at 941-43 (California’s ban on the in-state sale of certain types of foods, including foie gras made by the plaintiffs).
Nor do cases that concerned the validity of state-imposed taxes, such as Quill Corp., 504 U.S. 298, 112 S.Ct. 1904, and Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), control here. The rules applied in those cases do not govern because the Act does not impose a tax; it regulates conduct among private parties. The Act requires the seller or the seller’s agent to pay a royalty to the artist, a private party, not to the government. Cal. Civ.Code § 986(a). The Act even spells out additional procedural requirements for agents of sellers: “the agent shall withhold 5 percent of the amount of the sale, locate the artist and pay the artist.” Id. § 986(a)(1). The agent must withhold the royalty, undertake affirmative efforts to locate the artist and, once found, pay the artist. Nothing of the sort is required by an ordinary tax law, such as those at issue in Quill Corp. and Complete Auto.[1]
It matters not that, in some circumstances, the royalty amount eventually may wind up, through a form of escheat, in a special fund of the State’s coffers. If the seller or the agent -withholds the royalty, attempts unsuccessfully to locate the artist, remits the royalty to the Arts Council after 90 days, and if the Arts Council attempts unsuccessfully to locate the artist for seven years, only then does “the right of the artist terminate[ ],” and an amount equal to the royalty may be used by the Arts Council to purchase fine art. Id. § 986(a)(5). That contingent consequence seven-and-a-quarter years after the sale does not change the fact that the Act directly regulates the conduct of the seller or the seller’s agent for a transaction that occurs wholly outside the State. Accordingly, Healy governs. Under Healy, the Act’s clause regulating out-of-state art sales where “the seller resides in California,” Cal. Civ.Code § 986(a), and no other connection to California need exist, violates the dormant Commerce Clause as an impermissible regulation of wholly out-of-state conduct.
The partial concurrence urges us to impose an artificial limitation — one never urged by any party — on that straightforward holding by limiting it to agents and not deciding the issue with respect to sellers. We decline for the simple reason that the constitutional doctrine that we apply operates without regard to that distinction. Under Healy, “the Commerce Clause pre *1325 eludes the application of a state statute to commerce that takes place wholly outside of the State’s borders.” 491 U.S. at 336, 109 S.Ct. 2491 (ellipsis and internal quotation marks omitted). As we explain above, the Act’s regulation of out-of-state sales runs afoul of that constitutional rule; accordingly, we must strike that portion of the Act as an impermissible regulation of wholly out-of-state commerce.
The scope of our holding is neither improper nor inconsistent with the Supreme Court’s guidance. It is always possible to narrow a holding. For example, we could limit our holding today to agents from New York and reserve the question with respect to agents from, say, Pennsylvania. Or we could limit our holding to corporate agents and reserve the question with respect to natural persons. But, where the constitutional rule applies without regard to those facts, issuing an artificially constrained opinion serves no purpose; indeed, it would confuse the issue and lead to judicial inefficiency. Contrary to the partial concurrence’s assertion, we neither “anticipate a question of constitutional law” nor “formulate a rule of constitutional law.” United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); partial concurrence at 1328. We merely apply the simple, well established constitutional rule summarized in Healy.
C. Severability
We next consider whether we may sever the invalid clause' — '“the seller resides in California or” — from the remainder of the Act. “Severability is ... a matter of state law.” Leavitt v. Jane L., 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996) (per curiam). In California, courts “look first to any severability clause.” Cal. Redev. Ass’n v. Matosantos, 53 Cal.4th 231, 135 Cal.Rptr.3d 683, 267 P.3d 580, 607 (2011). Here, the California legislature enacted the following provision:
If any provision of this section or the application thereof to any person or circumstance is held invalid for any reason, such invalidity shall not affect any other provisions or applications of this section which can be effected, without the invalid provision or application, and to this end the provisions of this section are severable.
Cal. Civ.Code § 986(e). That broadly worded clause covers the situation here. Accordingly, there is “a presumption in favor of severance.” Cal. Redev. Ass’n, 135 Cal.Rptr.3d 683, 267 P.3d at 607; see also Santa Barbara Sch. Dist. v. Superior Court, 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, 618 (1975) (holding that “a severability clause normally calls for sustaining the valid part of the enactment” (internal quotation marks omitted)).
We must also look to “three additional criteria: The invalid provision must be grammatically, functionally, and volitionally separable.” Cal. Redev. Ass’n, 135 Cal.Rptr.3d 683, 267 P.3d at 607 (internal quotation marks omitted). The first two criteria are met easily. After severance, the revised provision reads: “Whenever a work of fine art is sold and ... the sale takes place in California, the seller or the seller’s agent shall pay to the artist of such work of fine art or to such artist’s agent 5 percent of the amount of such sale.” Cal. Civ.Code § 986(a) (severed clause replaced with ellipsis). Grammatical separability exists because “the invalid part[] can be removed as a whole without affecting the wording or coherence of what remains”; the revised provision above is perfectly coherent.[2] Cal. Redev. Ass’n, 135 Cal. *1326 Rptr.3d 683, 267 P.3d at 607 (internal quotation marks omitted). Similarly, there is functional separability because “the remainder of the statute is complete in itself.” Id., 135 Cal.Rptr.3d 683, 267 P.3d at 608 (internal quotation marks omitted). The revised provision has a reduced scope, of course, because it applies only to instate sales; but it is complete, has coherent functionality, and does not conflict with any of the Act’s other provisions.
The volitional separability test, although not facially obvious, also is met. We conclude that “the remainder [of the statute] would have been adopted by the legislative body had [it] foreseen the partial invalidation of the statute.” Id. (internal quotation marks omitted). Indeed, we think that the legislature actually foresaw the partial invalidation of the statute. In detailed letters to the bill’s legislative sponsor and to the governor, while deliberations were underway and before the Act’s passage, legislative counsel explained that the law’s “application to sales which occur outside of the State of California” would violate the Commerce Clause. But, counsel opined, the law “would be valid'... as to sales which occur in California.” Despite those warnings, the enacted version of the law included regulation of both instate sales and out-of-state sales in easily separable clauses. Perhaps most tellingly, the enacted version also added the sever-ability clause, which expressly states the legislature’s intent that “the provisions of this section are severable” if “any provision of. this section or the application thereof to any person or circumstance is held invalid for any reason.” Cal. Civ. Code § 986(e). We find no reason to deviate from the “presumption in favor of severance.” Cal. Redev. Ass’n, 135 Cal.Rptr.3d 683, 267 P.3d at 607.
D. Conclusion
California Civil Code section 986 regulates out-of-state and in-state sales of fine art. We hold that the provision regulating out-of-state sales violates the dormant Commerce Clause but that the provision is severable from the remainder of the Act. Because the district court held that the Act fell in its entirety, the court did not reach Defendants’ alternative arguments. We return this case to the three-judge panel for its consideration of the remaining issues. We leave to the panel’s discretion the decision whether to- address those issues on the merits or to remand them for the district court’s determination in the first instance.
REMANDED to the three-judge panel.

. For the same reasons, we reject the partial concurrence’s assertion that the Act is "only a minor regulation of the proceeds.” Partial concurrence at 1328. The Act requires the seller or the seller’s agent affirmatively to look for the artist and to pay the artist a royalty. If the seller or the seller’s agent fails to locate the artist adequately, the artist may sue for damages plus attorney fees. The Act's regulation of the conduct of the seller and the seller's agent is neither "minor” nor a "regulation of the proceeds" alone.

. If we adopted the partial concurrence's approach, the grammatical separability test almost certainly would fail, and we would be required to invalidate the Act in its entirety. *1326 The partial concurrence refutes that conclusion by citing an earlier California Supreme Court case that purportedly does not require grammatical separability. Partial concurrence at 1330 n.9 (citing People v. Kelly, 47 Cal.4th 1008, 103 Cal.Rptr.3d 733, 222 P.3d 186 (2010)). Because the latest California Supreme Court precedent plainly requires grammatical separability, though, we apply that test. See also Vivid Entm’t, LLC v. Fielding, 774 F.3d 566, 574-75 (9th Cir.2014) (applying the grammatical separability test from California Redevelopment Ass’n).